**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MCKAYLA PAUL LINDO,

Plaintiff,

v.

ERIKA NAJARIAN and
EDWARD NAJARIAN,

Defendants.

---

Case No.:

**COMPLAINT**

Jury Trial Demanded

Plaintiff, MCKAYLA PAUL LINDO ("Plaintiff"), by and through her undersigned attorneys, hereby files this Complaint against Defendants, ERIKA NAJARIAN and EDWARD NAJARIAN (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et seq.* ("FLSA"), that she is entitled to recover from Defendants: (1) unpaid wages due to time shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she is entitled to recover from Defendants: (1) unpaid overtime compensation, due to a fixed salary, (2) unpaid wages, including overtime, due to time shaving, (3) unpaid spread of hours premiums,

(4) statutory penalties for failing to provide wage and hour notices upon hiring and as legally required thereafter, (5) statutory penalties for failing to provide proper wage statements for each payment period, (6) liquidated damages, and (7) attorneys' fees and costs.

3. Plaintiff further alleges that Defendant EDWARD NAJARIAN deprived her of her statutory rights as a result of their discriminatory employment practices and that she is entitled to recover from them for discrimination on the basis of sex and race in violation of New York State Human Rights Law, New York Executive Law § 296 et seq. ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"). She brings these claims to recover: (1) compensatory damages; (2) punitive damages; and (3) attorney's fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6. Plaintiff MCKAYLA PAUL LINDO is a resident of Kings County, New York.

7. At all relevant times, Defendants ERIKA NAJARIAN and EDWARD NAJARIAN employed Plaintiff as a live-in nanny at their residences in New York County, New York, and Suffolk County, New York.

8. Defendants ERIKA NAJARIAN and EDWARD NAJARIAN are individuals primarily residing in New York County, New York. Defendants exercised control over the

employment terms and conditions of Plaintiff. Defendants had and exercised the power and authority to (i) hire and fire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff. Defendants maintained the power and authority to supervise and control Plaintiff's work and directed the manner in which Plaintiff performed her duties as a live-in nanny.

9. At all relevant times, Defendants were and continue to be "employers" within the meaning of the FLSA and NYLL.

10. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

11. At all relevant times, the work performed by Plaintiff was directly essential to the household operated by Defendants.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

12. In or around February 2025, Plaintiff was hired by Defendants to work as a live-in nanny, caring for Defendants' infant child, at Defendants' residences in Manhattan and East Hampton. Plaintiff was employed by Defendants from approximately February, 2025 until on or about October, 2025, when Defendants terminated her employment.

13. From approximately February 3, 2025 through on or about April 1, 2025, Plaintiff was regularly scheduled to work Monday through Friday from approximately 6:30 a.m. to 7:00 p.m., for a total of approximately sixty-two and one-half (62.5) hours per week. Beginning on or about April 2025, Plaintiff transitioned to a weekend schedule, with approximately thirty (30) scheduled hours per weekend. However, Plaintiff always worked beyond these hours, as she was

expected to be available and on-call twenty-four hours per day during that time, including overnight.

14. From February through April 2025, Plaintiff was paid a fixed daily rate of $325.00 per day regardless of how many hours she worked. From around April 2025 to the end of her employment with Defendants, Plaintiff was paid a flat rate of $900.00 per weekend regardless of her actual hours worked.

*Unpaid Overtime Wages, due to a Fixed Salary*

15. At all relevant times, Plaintiff was deprived of overtime wages, due to an improper fixed salary policy.

16. Plaintiff worked for Defendants as a live-in nanny, which is a non-exempt occupation under the NYLL. Accordingly, Plaintiff was an hourly employee and was therefore entitled to overtime compensation.

17. Throughout her employment, Plaintiff was paid a fixed salary regardless of her actual hours worked, including her overtime hours. Specifically, Defendants paid Plaintiff a daily rate of $325.00 from February 2025 through April 2025, and $900.00 per weekend for the remainder of her employment — rates agreed upon based on the scheduled hours described above.

18. Because Plaintiff regularly worked beyond her scheduled hours, however, her actual effective rate was lower. Defendants required Plaintiff to be on-call 24/7, meaning if Defendants' child needed anything, she would be required to assist. Because Plaintiff was not free to leave the residence or otherwise use her off-hours as she saw fit, she was "engaged to wait", and those hours constitute compensable time worked under the NYLL.

19. Plaintiff was also not compensated for other work performed outside of her scheduled hours. From the start of her employment through approximately April 2025, Plaintiff's

sleep was routinely interrupted on weekday nights by the child's crying, requiring her to attend to him until he fell back asleep and leaving her with approximately four (4) hours of sleep per night. For the remainder of her employment, this occurred once per weekend. Because Plaintiff was unable to sleep for at least five consecutive hours on those nights, she is entitled to compensation for the entirety of each such night.

20. Throughout her employment, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty-four (44) each week under the NYLL. Despite this, Defendants paid all of Plaintiff's hours at a fixed salary. Plaintiff was required to work overtime every week of her employment, but never received the overtime premiums for the hours she worked over forty-four (44).

21. Defendants knowingly and willfully subjected Plaintiff to a fixed salary policy, in violation of the NYLL.

*Unpaid Wages, due to Time Shaving*

22. At all relevant times, Defendants failed to pay Plaintiff for all hours worked, due to time shaving.

23. While Defendants paid Plaintiff on a fixed per-day basis, certain shifts went entirely uncompensated. Defendants employed two nannies, a weekday nanny and a weekend nanny. When the other nanny was unavailable, Plaintiff was required to cover her shift. Defendants never compensated Plaintiff for this time, not even at her fixed daily rate. This practice deprived Plaintiff of forty-eight (48) hours of overtime compensation.

24. Defendants knowingly and willfully failed to compensate Plaintiff for all hours worked, due to time shaving, in violation of the FLSA and NYLL.

*Unpaid Spread of Hours Premiums*

25. At all relevant times, Defendants failed to provide Plaintiff with spread of hours premiums for shifts lasting over ten (10) hours.

26. Throughout her employment, Defendants scheduled Plaintiff to work shifts lasting over ten (10) hours. For example, from approximately February 3, 2025 through on or about April 1, 2025, Plaintiff’s scheduled shifts started at 6:30 a.m. and ended at 7:00 p.m. Moreover, Defendants required Plaintiff to remain on-call 24/7 for every shift—meaning the spread of hours for each workday was twenty-four (24). Nevertheless, Defendants at all times failed to provide Plaintiff with spread of hours premiums.

27. Plaintiff is entitled to spread of hours premiums because, as described above, she was really a minimum-wage (or near-minimum wage, where applicable) worker. As a result of Defendants' fixed-salary compensation scheme, time-shaving practices, and Plaintiff's requirement to remain available throughout the day and night to care for Defendants' infant while engaged to wait, Plaintiff's effective hourly rate during weekdays was approximately $13.54 per hour ($325 / 24), which was below the applicable statutory minimum wage of $16.50 per hour.

28. Defendants knowingly and willfully failed to provide Plaintiff with spread of hours premiums for shifts lasting over ten (10) hours, in violation of the NYLL.

*Discrimination and Hostile Work Environment Claims*

29. Plaintiff is an African American woman.

30. Plaintiff was routinely harassed sexually by Defendant EDWARD NAJARIAN (“EDWARD NAJARIAN”) whenever she worked at Defendants’ house.

31. Throughout Plaintiff's employment, EDWARD NAJARIAN repeatedly made unsolicited and unwelcome comments about her hair, including stating more than once that he preferred her straight, natural hair over her braids, which made Plaintiff very uncomfortable.

32. Plaintiff understood these remarks to be racially motivated and sexually inappropriate. She felt that EDWARD NAJARIAN was evaluating her appearance based on his personal preferences rather than any job-related considerations, and that his comments reflected a sexualized view of her rather than a professional one.

33. EDWARD NAJARIAN's comments about Plaintiff's appearance were not limited to those made directly to her. Plaintiff learned that he also discussed her hair with her coworker, Taiana [LNU], stating that Plaintiff had "a lot of hair." This made the situation feel more intrusive and reinforced Plaintiff's understanding that his attention to her appearance was not casual, but inappropriate and unwelcome.

34. On one occasion, EDWARD NAJARIAN picked up Plaintiff's personal glass of water and drank from it, knowing it belonged to her. When Plaintiff reacted, he attempted to dismiss the conduct and minimize its significance.

35. The conduct was unwelcome and inappropriate. Drinking from Plaintiff's personal glass of water was an intrusion into her personal space and boundaries. In combination with the prior comments regarding her hair, the incident caused Plaintiff to feel that EDWARD NAJARIAN did not respect her personal boundaries, contributing to her discomfort in the workplace.

36. Additionally, Plaintiff's co-worker, Rochelle [LNU] informed Plaintiff that EDWARD NAJARIAN had complained that Plaintiff was not speaking with him. Plaintiff understood there to be no professional basis for any expectation of personal conversation, as her

duties were limited to caring for the children. His expectation of personal engagement, together with his comments regarding Plaintiff's appearance, reinforced Plaintiff's belief that his conduct extended beyond a normal employer-employee relationship.

37. While Plaintiff was employed there, she learned that EDWARD NAJARIAN instructed Rochelle [LNU] not to share scheduling information with her. As a result, Plaintiff experienced difficulties performing her job and was unable to adequately plan her personal obligations due to uncertainty about her schedule.

38. Plaintiff believes that EDWARD NAJARIAN intentionally withheld scheduling information from her in retaliation. Plaintiff further believes that, because she did not respond to or acknowledge his conduct, EDWARD NAJARIAN escalated his retaliatory mistreatment by isolating her and withholding necessary work-related information.

39. Taken together, EDWARD NAJARIAN's repeated comments about Plaintiff's hair, his drinking from her glass, and his deliberate withholding of scheduling information created a hostile, intimidating, and offensive work environment.

40. Such incidents were part of Plaintiff's ordinary workday and caused Plaintiff continual anxiety and depression.

*WTPA Claims*

41. Plaintiff did not receive any wage statements during her employment with Defendants. Plaintiff was paid exclusively through Venmo or cash, with no itemized pay stubs or wage statements of any kind, in violation of the NYLL.

42. Defendants failed to provide Plaintiff with any wage notices at hiring or at any time thereafter. Plaintiff did not receive a written wage notice either upon being hired or upon any wage changes, in violation of the NYLL.

43. In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

44. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

45. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff of the actual hours that she worked by not providing her with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff was unaware of the fact that she was being underpaid. Had Defendants provided proper wage statements to Plaintiff which accurately listed the total number of hours Plaintiff actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours Plaintiff actually worked.

46. By failing to report Plaintiff's hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff was irreversibly injured with respect to her benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide her with proper wage statements.

47. Furthermore, Defendants failed to provide any wage notices to Plaintiff. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff with wage notices that communicated the rates that Defendants actually intended to pay her, Plaintiff would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff accepted her employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

48. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff with wage notices and wage statements, in violation of the NYLL.

49. Defendants knowingly and willfully operated their household with a policy of not paying Plaintiff the proper overtime rate for hours worked in excess of forty-four (44) in each workweek due to being paid a fixed daily rate.

50. Due to these unlawful acts of Defendants, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

51. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

52. Plaintiff realleges and reavers all the foregoing allegations as if fully set forth herein.

53. At all relevant times, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a).

54. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

55. Plaintiff is a domestic service employee covered under the FLSA. Domestic service employment means services of a household nature performed by a worker in or about a private home. As a live-in domestic service employee, Plaintiff is exempt from the FLSA's overtime provisions pursuant to 29 U.S.C. § 213(b)(21). However, Plaintiff must still be paid at least the federal minimum wage for all hours worked.

56. At all relevant times, Defendants willfully violated Plaintiff's rights by failing to compensate Plaintiff for all hours worked, due to time shaving.

57. Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this

case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

58. Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

59. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

60. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages due to time shaving, plus an equal amount as liquidated damages.

61. Plaintiff is entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**

62. Plaintiff realleges and reavers all the foregoing allegations as if fully set forth herein.

63. At all relevant times, Plaintiff was employed by Defendants within the meaning of the NYLL §§ 2 and 651.

64. At all relevant times, Defendants willfully violated Plaintiff's rights by failing to pay overtime compensation for hours worked in excess of forty-four (44) each week, due to an improper fixed salary policy.

65. At all relevant times, Defendants willfully violated Plaintiff's rights by failing to compensate Plaintiff for all hours worked, due to time shaving.

66. At all relevant times, Defendants willfully violated Plaintiff's rights by failing to pay spread of hours premiums for shifts exceeding ten (10) hours.

67. Defendants failed to properly notify Plaintiff of her overtime pay rate, in direct violation of NYLL.

68. At all relevant times, Defendants knowingly and willfully operated their household with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they provided no wage statements whatsoever to Plaintiff.

69. Defendants knowingly and willfully operated their household with a policy of not providing Plaintiff with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

70. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants her unpaid overtime compensation, due to a fixed salary; unpaid wages due to time shaving; unpaid spread of hours premiums; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

71. Plaintiff realleges and reavers all the foregoing allegations as if fully set forth herein.

72. The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status,

marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

73. "Until fairly recently, the standard applicable to hostile work environment claims brought pursuant to the NYSHRL mirrored the federal standard. But on October 11, 2019, amendments to the NYSHRL came into effect that eliminated the 'severe and pervasive' standard. N.Y, Exec. Law § 300. The new standard requires a plaintiff allege that they were subjected to 'inferior terms, conditions or privileges of employment because of the individual's membership in one or more ... protected categories.' *Id.* This updated and more lenient standard is similar to the standard for stating a hostile work environment claim under the NYCHRL, discussed below." *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, 2022 U.S. Dist. LEXIS 31075, *25-26 (S.D.N.Y. Feb. 22, 2022).

74. EDWARD NAJARIAN discriminated against Plaintiff in violation of NYSHRL by subjecting her to a hostile work environment on the basis of her sex and race.

75. EDWARD NAJARIAN's conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under NYSHRL.

76. As a direct and proximate result of EDWARD NAJARIAN's unlawful acts in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and relief, including punitive damages and attorney's fees.

**COUNT IV**

**DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW**

77. Plaintiff realleges and reavers all the foregoing allegations as if fully set forth herein.

78. The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of sex and race, providing that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

The New York City Administrative Code § 8-107(1)(a).

79. Plaintiff was an employee and qualified person within the meaning of NYCHRL and EDWARD NAJARIAN is covered employer under NYCHRL.

80. EDWARD NAJARIAN's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under NYCHRL.

81. EDWARD NAJARIAN discriminated against Plaintiff in violation of NYCHRL by subjecting her to a hostile work environment on the basis of her sex and race.

82. As a result of this unlawful employment practice, Plaintiff sustained injury, including but not limited to emotional distress.

83. Due to these violations under NYCHRL, Plaintiff is entitled to recover from Defendants: (1) compensatory damages; (2) punitive damages; and (3) attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid overtime compensation, due to an improper fixed salary policy;

d. An award of unpaid wages, due to time shaving;

e. An award of unpaid spread of hours premiums for shifts worked in excess of ten (10) hours;

f. An award of compensatory damages for Plaintiff's emotional suffering as a result of Defendant's unlawful discriminatory practices, pursuant to NYSHRL and NYCHRL;

g. An award of punitive damages for Defendant's unlawful discriminatory practices, pursuant to NYSHRL, and NYCHRL;

h. An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work, pursuant to NYLL;

k. An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties; and

l. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: November 6, 2026

Respectfully submitted,

By: *__/s/ C.K. Lee__*

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Email: cklee@leelitigation.com
*Attorneys for Plaintiff*